UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 7: 23-014-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| VIRGIL SAYLOR, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

This matter is pending for consideration of Defendant Virgil Saylor's Motion to Compel Pre-Trial Disclosure of *Brady* Materials. [Record No. 87] Saylor seeks specific exculpatory and impeachment evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), which he asserts is necessary for adequate trial preparation. The United States has opposed the motion, contending that the requested materials are either irrelevant, inadmissible, or have been produced previously. [Record No. 98] Following review, Saylor's motion will be denied for the reasons set forth below.

## I. Background

On July 30, 2023, a grand jury indicted Saylor for his alleged involvement in illegal cockfighting activities in violation of the Animal Welfare Act. [Record No. 1]. The Indictment charges Saylor with conspiracy in violation of 18 U.S.C § 371 and using an instrumentality of interstate commerce to promote an animal fighting venture in violation of 7 U.S.C. § 2156(c). [*Id.*]

Federal agents executed a search warrant at the Whitesburg Chicken Pit on February 26, 2022.[1] [Record No. 98, p. 3] During the search, law enforcement discovered that Saylor participated in organizing and managing an event, which drew around 200 attendees, including minors. [Record No. 98, p. 3] Saylor confessed to his involvement during an interview conducted at the scene. [*Id.*] The government seized and euthanized the birds involved, citing public health concerns and recommendations from various agencies. [*Id.* at 3–4]

Saylor seeks to compel the following evidence and/or information: (1) All video (including body-worn camera footage from any agency that assisted in the raid of the Whitesburg Pit), and all pictures or other inventory of the chickens seized during the raid; (2) the current location of the seized chickens; (3) the identity of the party responsible for euthanizing the seized chickens; (4) the method used to euthanize the chickens; (5) whether the seized chickens were examined by a veterinarian; (6) any and all documents reports or notes relating to the activities mentioned in the seizing, examining, and euthanizing of the chickens; (7) copies of any orders directing the seized chickens be euthanized; and (8) any materials received from SHARK[2] in relation to cockfighting at the Whitesburg Pit. [Record No. 87, pp. 1–2] He argues that this information is necessary for trial preparation and potential impeachment of the government's expert witnesses. [*Id.*] The government opposes the

---

[1] The Whitesburg Chicken Pit (the "Whitesburg Pit") was an animal fighting venture located near KY 15 near the Isom Mine in Whitesburg, Kentucky. [*See* Record No. 1, ¶ 8.] The Whitesburg Pit may also be referred to as "American Testing Facility" or "Isom." [*Id.*]

[2] SHARK, which stands for "SHowing Animals Respect and Kindness," is a registered 501(c)(3) non-profit organization with the stated mission of "nonviolently battle[ing] animal abuse whenever and wherever possible."

motion, contending that the requested information is irrelevant and not exculpatory. [Record No. 98, p. 1]

## II. Legal Standard

Under *Brady v. Maryland*, 373 U.S. 83 (1963), the prosecution is required to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment. *Id.* at 87. *But see United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) (quoting *United States v. Beaver,* 524 F.2d 963, 966 (5th Cir. 1975)) ("But *Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess."). The government's disclosure obligation includes both exculpatory evidence and impeachment evidence that could affect the credibility of government witnesses. *See California v. Trombetta*, 467 U.S. 479, 485 (1984); *Giglio v. United States*, 405 U.S. 150, 154–55 (1972). "Evidence is 'material,' if it creates a 'reasonable probability of a different result,' such that its suppression 'undermines confidence in the outcome of the trial.'" *Chinn v. Warden*, 24 F.4th 1096, 1102 (6th Cir. 2022) (first quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); and then quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Federal Rule of Criminal Procedure 16 further governs discovery in criminal cases, mandating that the government disclose certain types of evidence upon the defendant's request, including documents, objects, and reports of examinations and tests. Fed. R. Crim. P. 16(a)(1)(E), (F). However, the rule does not provide a right to general discovery of the government's evidence. *See United States v. Sanders*, No. 21-5945, slip op. at 20 (6th Cir. June 28, 2024) (en banc) ("The Constitution affords a criminal defendant no general right to discovery."); *see also* Fed. R. Crim. P. 16(a)(2). The scope of discovery under Rule 16, in relevant part, is limited to that which is material to the preparation of the defense, intended for

use in the government's case-in-chief, or obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E)(i)–(iii).

Demonstrating an entitlement to this information requires a defendant to show that the evidence or information he seeks will help to "combat the government's case against him as to one of the charged crimes." *United States v. Harney*, 934 F.3d 502, 508 (6th Cir. 2019) (citing *United States v. Armstrong*, 517 U.S. 456, 462 (1996)). Demonstrating materiality for purposes of Rule 16 requires "more than conclusory arguments" that the evidence will be of assistance. *Id.* at 507–08. Mere speculation or claims that discovery will permit the defendant to "explore or discredit" other aspects of the government's case is insufficient. *Sanders*, No. 21-5945, slip op. at 25 (internal quotations omitted). "Put more simply, [a defendant] must offer 'some evidence' as to what discovery might yield." *Id.*

### III. Discussion

The present motion centers on the government's duty to disclose specific evidence under *Brady* and Rule 16. The primary issues raised by the motion include: (1) the materiality of the requested information and (2) whether the government has fulfilled its pre-trial discovery obligations.

#### A. Materiality of the Requested Information

Defendant Saylor asserts that the information regarding the euthanasia of the seized birds, including the identity of those involved and the methods used, is material to his defense. He claims this information will help to challenge the credibility of the government's experts, who may testify about the necessity and manner of euthanizing the birds. [Record No. 87, p. 9] This argument, however, ignores the fact that any post-seizure treatment of the birds is not material to the charged crimes.

Saylor also repeatedly asserts that he has been indicted "for animal cruelty involving chickens," but that assertion is incorrect.[3] [Record No. 87, p. 7] The Indictment charges Saylor with conspiracy and using an instrumentality of interstate commerce to promote animal fighting. [Record No. 1] Neither of the charged offenses requires the government to prove anything related to the health or condition of the chickens before or after their seizure. The core allegations against Saylor involve his participation in organizing and managing cockfighting events, not the handling of or care for the birds. As such, the birds' ultimate disposition is immaterial to the charged offenses.[4]

Saylor also requests all video, pictures, or other inventory of the chickens seized during the raid. [*Id.* at 2] He notes that the government has produced a photo of several dead chickens in a ditch, and postulates that the government will use these pictures as proof that chickens were killed during the chicken fights. [*Id.* at 9] And Saylor argues that the requested evidence can be used "to impeach or prove that these chickens may have been killed by the government post raid." [*Id.*] But Saylor's argument is flawed. Neither the conspiracy charge nor the promotion charge requires the government to prove a single chicken was even *harmed* through the animal fighting venture. As such, he has not demonstrated the requisite materiality under *Brady* or Rule 16.[5]

---

[3] The Kentucky statute referenced in the Indictment describes offenses broadly categorized as "cruelty to animals in the second degree." But Saylor was not indicted under Kentucky state law. *See* K.R.S. § 525.130.

[4] Therefore, the Court will deny requests 2–6. [Record No. 87, pp. 1–2]

[5] The Court likewise will deny request 1. [Record No. 87, p. 2]

Even if Saylor had demonstrated materiality, the government asserts that Saylor has already been provided with "all the video, photography, and interview reports from the search on February 26, 2022, as well as the undercover surveillance of the fights that took place on February 5 & 12, 2022."[6]  [Record No. 98, p. 4]  The government also states that its potential expert witness would offer "pure opinion testimony" relating to "animal health issues and the regulatory framework of the Animal and Plant Health Inspection Service."  [*Id.* at 5]  Saylor's hypothetical impeachment argument is undermined because the expert in question neither inspected nor examined the birds seized from the Whitesburg Pit.  [*Id.*]  These considerations provide an independent basis for denying Saylor's request.

Finally, Saylor requests any materials that the government received, at any time, from SHARK in relation to cockfighting at the Whitesburg Pit. [Record No. 87, p. 2]  This request is moot because the government reports that "SHARK did not provide any materials to the United States regarding the pit at Whitesburg or in relation to the warrant that identified Facebook messages of Saylor's."  [Record No. 98, p. 6]

### B. Government's Fulfillment of Discovery Obligations

The government contends that it has complied with its discovery obligations under *Brady* and Rule 16.  More specifically, it represents that it has provided Saylor with all material evidence related to the raid and the activities of February 26, 2022, including video footage, photographs, and interview reports.  [Record No. 98, p. 4]  The government further states that additional discovery relating to the examination and disposition of the seized birds is immaterial and not required under *Brady* or Rule 16.  The undersigned agrees.

---

[6]  Saylor did not file a Reply challenging this assertion.

Saylor's characterization of "the entire case" as being about "chickens and animal cruelty" misses the crux of the matter. [Record No. 87, p. 8] The government will not be compelled to produce discovery material based upon Saylor's reframing of the case—he was not indicted for animal cruelty. As such, he is not entitled to evidence that may otherwise be material in an animal cruelty case.[7] As this Court has already determined, arguments intended to promote jury nullification or distract from the issues at bar will not be permitted during trial. [*See* Record No. 114.] Making arguments based on a recharacterization of the crimes alleged falls squarely within that ruling. Considering the provided evidence and the applicable legal standards, the government appears to have met its pre-trial discovery obligations.

## IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** that Defendant Saylor's Motion to Compel [Record No. 87] is **DENIED**.

Dated: July 25, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky

---

[7] If indicted for animal cruelty under state law, Saylor's requests may be material because they have the potential to refute an element of the offense, namely, the requirement that one subjected an animal to ". . . mutilation, beating, torturing[,] . . . tormenting," or "cruel neglect." K.R.S. § 525.130(1)(a)–(b). The federal charges at issue do not have an animal treatment element.