UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CRIMINAL ACTION NO. 7:23-CR-00014-DCR-EBA-1

UNITED STATES OF AMERICA,     PLAINTIFF,

V.      **RECOMMENDED DISPOSITION**

VIRGIL SAYLOR,     DEFENDANT.

### FACTS

On February 26, 2022, the United States Department of Agriculture, the Federal Bureau of Investigation, and Kentucky state police initiated the search of an active animal fighting venture underway at the American Testing Facility, a cockfighting pit located in Whitesburg, Letcher County, Kentucky. [R. 105]. Between 50-100 law enforcement personnel took part in the execution of the search warrant and arrived in various marked and unmarked vehicles to the venue around 12:00 P.M. [R. 119, testimony of Officer Zach Bryson at 10:00, 19:18]. Some officers carried handguns while others carried some form of semi-automatic weapon. [*Id.*, at 21:55]. At least one helicopter flew over the venue at some point during the execution of the search warrant. [*Id.,* at 23:35].

Shortly after officers arrived, USDA-OIG Special Agent Nathan Unger addressed the crowd on a microphone from the announcer's booth of the venue advising the attendees of the identity of the agencies and officers at the venue and that they were executing a search warrant of the venue. [R. 119, testimony of Nathan Unger at 56:00]. While on the microphone, Agent Unger announced to attendees that no one would be arrested that day, and if attendees needed to use the restroom, officers would escort them to the restroom. [*Id.*]. Agent Unger directed the individuals

in the venue not to leave until the scene was cleared and the search was fully executed, which included searching attendees' vehicles. [*Id.*].

Within minutes of the officers' arrival at the venue, Task Force Officer Zach Bryson and Special Agent Nathan Unger interviewed Virgil Saylor in the announcer's booth of the venue. [R. 119, testimony of Officer Bryson at 5:33]. Bryson read Saylor his Miranda rights and asked if Saylor preferred to be interviewed alongside his partner, Tina Miller, or separately. [*Id.*, at 7:40]. The two agreed to be interviewed together. [*Id.*]. During the interview, Saylor answered officers' questions regarding the Whitesburg Chicken Pit operation and his personal involvement in its operation. [*Id.*; testimony of Agent Unger at 54:45]. The door remained open and unlocked during the interview. [*Id.* at 9:15; Testimony of Agent Unger 51:00]. Photos taken of the announcer's booth during the execution of the search warrant show an officer standing in the doorway of the announcer's booth with Mr. Saylor inside. [R. 119, Government Exhibit 4]. The interview lasted between 30 minutes to one hour. [R. 119, testimony of Officer Bryson at 10:38; *Id.*, testimony of Agent Unger at 55:25]. At the end of the interview, officers told Saylor that he and Miller could collect their nephew/grandson, join the other attendees, and that officers would search their vehicle before they could leave. [*Id.*, testimony of Agent Unger at 55:36]. Special Agent Unger searched Mr. Saylor's vehicle. [*Id.,* at 56:00].

On July 20, 2023, a federal grand jury indicted Virgil Saylor on charges of: (1) knowingly and voluntarily conspiring to violate 7 U.S.C. § 2156, prohibiting sponsoring and exhibiting animals in an animal fight venture, in violation of 18 U.S.C. § 371; and (2) knowingly using an instrumentality of interstate commerce for commercial speech for purposes of promoting an animal fighting venture in violation of 7 U.S.C. § 2156(c). [R. 1]. The matter is now before the Court on Saylor's motion to suppress statements made to officers during the execution of a search warrant

on February 26, 2022. [R. 102]. The United States filed a response in opposition. [R. 105]. The Court held an evidentiary hearing on the matter on August 6, 2024. [R. 119; R. 120]. For the reasons that follow, the undersigned will recommend that Saylor's motion to suppress his statements made to officers should be DENIED.

## Custody and Interrogation

The Defendant moves to suppress statements he made to officers arguing that when he spoke, he was subject to custodial interrogation and not properly advised of his rights under *Miranda v Arizona,* 384 U.S. 436 (1966). The Fifth Amendment precludes an individual from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). Prior to custodial interrogation, a person must be warned that he "has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

The Defendant contends that he was subject to custodial interrogation. [R. 102-1, p. 2]. The United States disagrees and argues that he was not in custody. [R. 105]. Assuming, without finding that Mr. Saylor was in custody at the time of the interview, his Fifth Amendment rights were not violated. The only proof offered to the Court is uncontradicted and demonstrates that Saylor was given his *Miranda* rights before being interviewed. Officer Bryson and Agent Unger both testified that Bryson read Mr. Saylor his *Miranda* rights from a sheet of paper prior to asking any questions. [[R. 119, testimony of Officer Bryson at 5:33; R. 119, testimony of Agent Unger at 59:10]. Both Officer Bryson and Agent Unger also testified that Mr. Saylor then agreed to speak

to the officers and that the tone of the interview was friendly. [R. 119, testimony of Officer Bryson at 10:40; *Id.,* testimony of Agent Unger 55:15]. No evidence was produced to the contrary. Therefore, with uncontradicted evidence that Mr. Saylor was read notified of his rights under *Miranda*, the Court must find that Mr. Saylor was in fact Mirandized.

Having determined that Saylor was Mirandized, the Court must next consider whether Saylor waived his *Miranda* rights during the interrogation. A valid *Miranda* waiver requires an individual to waive his right against self-incrimination voluntarily, knowingly, and intelligently. *Garner v. Mitchell,* 557 F.3d 257, 260-61 (6th Cir. 2009). Voluntariness requires "a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Lawrence,* 735 F.3d 385, 437 (6th Cir. 2013). Comprehension requires an accused's "full awareness of both the nature of the right" he chooses to abandon and "the consequences of his decision to abandon it." *Id.* An individual waives his *Miranda* rights when the totality of the circumstances reveals that he voluntarily chose to do so while comprehending the nature of his choice. *Id.*

In *United States v. Adams,* the Sixth Circuit held that where the defendant did not execute a written waiver of his *Miranda* rights, officers read the defendant his *Miranda* rights, verbally responded affirmatively when asked if he understood his rights, and there was no indication that the defendant asked for a lawyer, the Sixth Circuit held that the record reflected, by a preponderance of the evidence, that the defendant knowingly and voluntarily waived his *Miranda* rights. *United States v. Adams,* 583 F.3d 457, 467-68 (6th Cir. 2009). Similar here, the uncontradicted testimony shows that after Officer Bryson read Mr. Saylor his *Miranda* rights and Saylor knowingly and voluntarily waived his *Miranda* rights. First, Officer Bryson read Saylor his *Miranda* rights and Saylor agreed to speak with Officer Bryson and Agent Unger. [R. 119, testimony of Agent Unger 54:30]. After Officer Bryson read Saylor his *Miranda* rights, he asked

Saylor if he understood his rights. [*Id.*, testimony of Agent Unger 59:17]. Officers, then, asked Mr. Saylor if he wished to be interviewed alongside Tina Miller, or separately, and Saylor agreed to be interviewed alongside Miller. [*Id.*, testimony of Officer Bryson at 7:35]. The evidence shows that the tone of the interview was friendly and that the officers did not use any aggressive tactics to elicit responses from Mr. Saylor. [*Id.*, testimony of Officer Bryson at 14:10, 14:50]. Further, there is no indication that Mr. Saylor asked for a lawyer during the interview, nor does Saylor assert that he made such a request. Therefore, assuming, without finding, that Saylor was in custody at the time of the interview the evidence before the Court shows that Saylor knowingly and voluntarily waived his *Miranda* rights, and his motion to suppress the allegedly incriminating statements made during the interview with Officer Bryson and Agent Unger must be denied.

## RECOMMENDATION

IT IS RECOMMENDED that Virgil Saylor's Motion to Suppress alleged statements made to officers, [R. 102], should be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(1).

Signed August 12, 2024.

