UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | SENTENCING MEMORANDUM OF VIRGIL SAYLOR |
| | ) | |
| | ) | Docket No.: 7:23-CR-014-DCR-01 |
| Virgil Saylor | ) | |
| | ) | |

Comes now Virgil Saylor by and through counsel and for his sentencing memorandum states the following:

BACKGROUND

Virgil Saylor is 62 years of age with a fourth-grade education. He resides in Tennessee in a rental home. He receives disability benefits as his means of support having been determined to be fully disabled by the Social Security Administration. He is member of the Sunrise Baptist Church in New Tazewell, TN. He has 5 children, four sons and a daughter. He maintains a close relationship with all of them. He has a son who is disabled and resides with Virgil and his wife, who provide care for the disabled child.  Virgil has been a contributing member of his community including being involved in a community service projects for autism awareness, motorcycle runs for Shriners, and coal miners memorial ride for families of deceased coal miners. Further, several members of the community attach letters of support for Virgil. (Exhibit

1

1.) He has diabetes and was recently diagnosed with stage IV liver disease and has been referred to a specialist for further diagnostics and a treatment plan. (Exhibit 2.)

ARGUEMENT

Saylor objected to the finding and recommendation of Paragraphs 22, 30, 32, 74, 77, 80 and any other paragraph not consistent with the argument and Sentencing Guideline Calculation made and asserted herein by Saylor. The finding that he is a manager/ supervisor and a level 16, which results in him being a Level D and sentencing range of 21-27 months is not warranted under the facts of this case. The basis of this calculation in the PSR is the assertion that he receives a three (3) level enhancement because he was a "manager or supervisor" pursuant to USSG Section B1.1(b). Saylor objected and asserted that he was not a manager/ supervisor.  As the overwhelming evidence in the matter establishes that Saylor was not a manager/supervisor. In support of his objections Saylor attaches and references various pieces of evidence, ipad notes of special agent the day of the raid that led to this case before the Court, and the alleged interview statements, pictures taken by the government the day of the raid, and statements taken by the government of various parties. Each of these will be discussed herein.

It is uncontested the following:  the chicken pit was owned by Rob Baker and his wife Elisha Baker.  Rob Baker and Elisha hired all the employees including all referees for the chicken fights, all concession workers, and numerous other employees essential to running the fights. Further, it is obvious that the Bakers received all the profits from the fights. Profits are key here as no one else received any of the profits, they were only paid for a particular service.  For

2

Example, Rob Baker said he hired and paid the referees $150.00 each and that there were 4-5 referees. (Exhibits 3,4,5,6 and 7.) Further, Rob Baker's wife Elisha Baker paid all the concession workers, maintained the books on cock houses, the keys to the cock houses, the bands for banding the chickens and held all the money from the operation, including but not limited to the gate, the concession stand, and money for the cock houses. She was involved in the hiring and paying of the referees and paying Virgil Saylor for security, and the concession workers. (Exhibit 4,5 and 8.)

      Rob Baker clearly admits he was there in the original building and built the pit with his brother and put thousands of dollars into the construction. He admits that his wife Alisha was in the guard shack the night of the raid, where it appears that all the gate money seized by the federal raid. Baker's wife was taking the $25.00 per person entry fee on the night of the raid. (Exhibit 3.) In addition, Rob Baker makes it clear that his wife runs the kitchen at the fights, another area where money generated from the illegal chicken fight was controlled and collected by Rob Baker or his wife. (Exhibit 4 and 5.) The Bakers controlled the paying and hiring of the employees as the notes and records found on Elisha Baker establish. (Exhibit 4 and 5.) The kitchen was controlled by Elisha Baker, Rob's wife. The kitchen was where the agents found the Cock House Keys, the books and notes for the fights, bands for banding chickens and various other items that indicate that the chicken fights were being controlled from the kitchen and by the Bakers. (Exhibits 4 and 5.) Money bags were found in the bag of Elisha Baker, notebooks and hand written notes were also found in her bag, which clearly establish that she was hiring and paying the employees. (Exhibits 4 and 5.)

Compellingly, even the Baker's own niece, Audranna Faith Brown, who was working in the kitchen with her aunt Alisha Baker, told the federal agents on the night of the raid that her aunt and uncle ran the pits. (Exhibit 6.) Interestingly, she did not mention Virgil Saylor's name. Further, another relative of the Bakers, Tommy Gibson in his statement identifies only two people working the chicken fights, and the two people he identifies are Rob Baker and Elisha Baker, Rob's wife. (Exhibit 7.) He further states that he learned about the pit from his cousin Robby Baker. Clearly, if Virgil Saylor was a manager/ supervisor in the chicken fighting scheme his name would have come up from these two close relatives of the Bakers who clearly ran the pit. The evidence is compelling and overwhelming that Rob Baker and his wife, Elisha Baker ran the chicken fights and were clearly the only ones in charge. Unbelievably, Elisha Baker was never charged in this case before the court. Counsel inquired during the litigation of this case from the United States Attorney's office as to any immunity agreements or promises made to the Bakers as to Rob's cooperation in exchange for not prosecuting his wife, Elisha. Counsel was told by the United States that there were no such agreements or promises. Counsel for Saylor would also note that of the five referees, only one was indicted or charged in this matter, even though they held significant roles in managing and controlling the chicken fights and were paid significant amounts of money. Even more compelling is that even in her statement to the FBI, Elisha Baker admits the notes and notebooks were her handwriting and that some of the notes were about a referee named "Les" demanding more money, so "Elisha & Robbie made notes trying to determine if they could pay Les additional money." (Exhibit 8.)[1] Further, Elisha in her

---

[1] This statement makes it clear that the Bakers had hired the referee, "Les" (Les Miller ) which is clearly a reference to the lone person that the Government attempts to assert that Virgil hired as a referee, but as the statement of Baker clearly indicates, they were the ones making the decision to hire him and in what amount.

4

statement makes it clear that she and Robbie set the price per head for the spectators, at $25 a head and set the age of who pays, when she and Rob set the price at the door to include children all the way down to the "age 10 years old and up." (Exhibit 8.) Shockingly, it appears that both the Bakers set the standard to not only allow children into the fight, but that they would make money from children all the way to the age of 10 years old. These obvious facts make it clear that Saylor is not a manager/ supervisor, nor did he possess any aggravating role in the chicken fighting. It is obvious he was just an employee paid and controlled by Rob Baker and his wife Alisha Baker, no different than the referees and kitchen help not charged in this matter.

As is always the case with aggravating or mitigating roles, their analysis is very fact heavy. That's why it is important to give a solid background and factual analysis of the other parties involved in the chicken fighting pit in Letcher County to understand each person's roll in the venture.

Considering Saylor's role compared to the other parties, he clearly did not have any authority to hire or fire any employee. That obviously rested solely with the Bakers, as they admit in their own statements. The obvious handwritten notes and notebooks of the Bakers provide tangible written evidence of a long-standing practice of the Bakers hiring and paying employees and keeping all the profits. There is zero evidence that Rob Baker or Elisha Baker had anyone that paid them as employees, or that anyone had any authority over them. There was no tangible evidence that Saylor ran the Cock fight. The United States relies almost exclusively on the self-serving statements of Rob Baker and Elisha Baker that clearly do not jive with the overwhelming tangible evidence acquired the day of the raid and execution of the search warrant and the statements of the close relatives that were interviewed at the pit on the day of

5

the raid. The pictures and of the evidence and the money seized the day of the raid show only Rob Baker and Elisha Baker in the key roles running the chicken pit. The evidence seized and viewed the day of the raid makes it clear that Virgil Saylor did not control the cock houses, which were controlled from the kitchen. He did not control the banding of chickens, as the bands were clearly found in the kitchen. Saylor did not hire any referees, Bakers did.[2] Saylor did not pay any employees. Bakers did. Saylor did not handle or arrange any gambling on the chickens. The Bakers set the charge per head and even charged children as young as 10 years old $25 to enter the fight. The day of the raid the agents found Elisha Baker taking up the gate admission of $25 per person and a virtual cornucopia of evidence pointing directly to her and her husband as the only managers or organizers of the organization. (Exhibits 4, 5 and 8.) The only other person mentioned in the role like Rob and Alisha was Tim Baker, but he had died prior to the raid.

Saylor made his limited role clear in his statement on the night of the raid. He was there to keep the drugs out of the fight. This is revealed by the attached Ipad interview notes from the night of the raid on the chicken pit, when he clearly states that if he found drugs on anyone, he threw them out. ( Exhibit 3.)

According to the United States Government, Saylor was paid for his duty there at the chicken fight, just like the kitchen workers, and the referees. According to Baker, he paid the five referees, $150 dollars each. That would be a budget of $750 dollars for the referee duties each night of fighting. According to the discovery in the case, approximately 300 people would attend

---

[2] Although the government attempts to argue that Saylor hired one lone referee by means of submitting a picture of a cracked cell phone from "Les," Elisha Baker in her statement discussing "Les" getting $50 extra pay, makes it clear that the Bakers actually hired and paid him as well (Exhibit 8.)

6

the fights on average. Further Baker stated that Saylor and Miller were paid $5 per person. (Exhibit 3.) That results in $1500 per night average. As a result, Saylor would receive almost the same pay from the same person for his duties as security to keep the drugs out of the chicken fight as the referees as his half would be approximately $750.00. Here obviously, it can be argued that Baker basically budgeted $750 for each aspect of the fights with his hired help. Referees received $750, Saylor on Security received $750, the kitchen and help nearly the same and obviously, Baker and his wife kept the profit and handled all the money.

      Understanding that Saylor was security and received no more pay than did the referees, who all not charged except for one, and his role and pay were much less than Alisha Baker who was not charged, and Rob who was probated.  It is clear he was not a manager/ supervisor Compellingly, even though Elisha Baker and her husband, owned the building, clearly controlled all aspects of the chicken fight from start to finish, and received all the profits of the venture, and she was not even charged, it is inconsistent and illogical to argue that Saylor should receive an aggravator enhancement, when Elisha Baker and the majority of the referees were not even charged. Looking at Saylor's role in this matter through the required factors of analysis for the aggravating circumstance, it's obvious that he should not receive aggravating enhancements or level increases. These factors include the following: "Factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." 18 U.S.C.S. app. § 3B1.1 Note 4. In fact, it has long been held that "a defendant must have exerted control

7

over at least one individual within a criminal organization for the enhancement of § 3B1.1 to be warranted." United States v. Vandeberg, 201 F.3d 805, 811 (6th Cir. 2000) (quoting United States v. Gort-Didonato, 109 F.3d 318, 321 (6th Cir. 1997)). Clearly, Saylor meets none of these to be considered a manager/ supervisor.

In pertinent part, it appears that Saylor was a security guard, with no authority to hire or fire, paid no employees, recruited no accomplices, claimed no right to a larger share to the fruits of the crime, had no control or power to plan or organize, and quite frankly zero control or authority over any of the others. In fact, not only should Saylor not be given a three-level increase, but he should be given a two-level decrease as he was clearly a minor participant.

Section 3B1.2 of the Sentencing Guidelines provides for a reduction in the base offense [**5] level of a defendant who played a mitigating role in the offense:

HN1 Based on the defendant's role in the offense, decrease the offense level as follows:

(a)If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b)If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

As discussed previously, Saylor should be considered a minor participant and be given a two-level decrease. Considering all these relevant facts, the United States Government, who was clearly aware of the significant role Elisha Baker and the other four referees played in the chicken fighting pit and chose not to even charge them, how could Saylor now be slapped with a three level increase for an aggravating role as a manager/supervisor, when he meets none of the requirements and definitely had a minor role compared to Rob Baker, who was probated, Elisha

8

Baker who was not indicted or charged, and four other referees, who were not indicted or charged.

Consequently, Saylor should receive a two-level decrease for being a minor participant pursuant to 3B1.2(b). Not giving him the three-level increase as discussed above for an aggravator role and starting with a base level offense of 16 and he receives a three-level drop for acceptance of responsibility and two-level drop for his minor role, he should be at a Base Level of 11, Zone B with criminal history of 1. He would be probation eligible both statutorily and as being in Zone B. Considering his poor health and limited role, he should be probated or given home incarceration in order that he can receive the proper medical treatment for his stage IV liver disease.

Respectfully Submitted,

Russell D. Alred

Counsel for Virgil Saylor

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument has been furnished to Hon. Kate Smith, Assistant U.S. Attorney, presently assigned to this case, and all other parties via electronic filing system on this 22nd day of January 2025.

/s/ *Russell D. Alred*
Russell D. Alred
P.O. Box 288
Harlan, Kentucky 40831
606-573-1920
*Counsel for Defendant*
*Virgil Saylor*